## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **GREGORY WILLIS,** | § | **CIVIL ACTION NO.:** |
| **EDDIE CULBERT** | § | |
| **RONALD SMITH, SR.** | § | **JURY DEMAND** |
| **ROY HUDSON,** | § | |
| **JENNIFER HILL,** | § | |
| **ISAAC JORDAN,** | § | |
| **JOHN MURCHISON,** | § | |
| **THOMAS JONES JR.** | § | |
| **CALDWELL BURGESS** | § | |
| **KELSOW WILLIAMS, JR.** | § | |
| **STAFFORD WILLIAMS and** | § | |
| **VANDA WILLIS** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **Versus** | § | |
| | § | |
| | § | |
| **CLECO CORPORATION** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiffs, **GREGORY WILLIS, EDDIE CULBERT, RONALD SMITH, SR., ROY HUDSON, JENNIFER HILL, ISAAC JORDAN, JOHN MURCHINSON, THOMAS JONES, JR., CALDWELL BURGESS, KELSOW WILLIAMS, JR., STAFFORD WILLIAMS** and **VANDA WILLIS; complains** of

Defendant, **CLECO CORPORATION**, and for cause of action and claims for relief would respectfully show the Court as follows**:**

## SUBJECT MATTER JURISDICTION

This action is filed under 42 U.S.C. Section 1981 and 1982, and Louisiana law, for protection against activities constituting a Hostile Work Environment; 42 U.S.C. Section 2000 for racial discrimination, 42 U.S.C. Section 1988, and 29 U. S. C. Sections 621-634 for employment discrimination based on age and failure to promote because of race.  The Federal Law Claims "arise under" 42 U.S.C. Section 1985 and Plaintiffs invoke 28 U.S.C. Section 1331 for Federal Jurisdiction.

## VENUE

The alleged unlawful practices of Defendant occurred in St. Tammany Parish, the place of work of John Murchison, who lives in Slidell proper; in addition, unlawful practices occurred in Pineville Louisiana, Mansfield Louisiana and Records exist in Slidell, Pineville, and Mansfield Louisiana.  Pineville is the principle place of doing business of CLECO, and Defendant's principle decision-making center, and records repose center.

Venue lays in this Court under 28 U.S.C.  §139(b) (1) and (2) as the events or omissions giving rise to this claim occurred within the Western District of Louisiana.

**CLECO CORPORATION** is domiciled in the State of Louisiana and licensed to do and doing business in Louisiana, and may be served through its Registered Agent:

**WADE A. HOEFLING**
Senior Vice-President and General Counsel
and Director of Regulatory Compliance
2030 Donahue Ferry Road
Pineville, Louisiana 71360

It has offices in this Judicial District and State, and has offices throughout this Judicial District and employs all of the Plaintiffs in this Parish and State.

## II.

### The Parties

3.      Plaintiffs, **GREGORY WILLIS, EDDIE CULBERT, RONALD SMITH, SR., ROY HUDSON, JENNIFER HILL, ISAAC JORDAN, JOHN MURCHINSON, THOMAS JONES, JR., CALDWELL BURGESS, KELSOW WILLIAMS, JR., STAFFORD WILLIAMS** and **VANDA WILLIS,** are all African-American citizens of the United States, and of residents of Rapides, Desoto, Avoyelles and St. Tammany Parishes of the state of Louisiana; they were and or were "employees" of said defendant and have been at all times relevant to this cause of action.

4.      Made Defendant is **CLECO CORPORATION** (CLECO)

5.      At all times relevant to in this Complaint, the Defendant was engaged in an industry affecting commerce and employed fifteen (15) or more employees.  Defendant was Plaintiffs "employer" within the meaning of 42 U.S.C. §2000e (b).

## III.

### OPERATIVE FACTS

6.      All Plaintiffs allege that they have been subjected to discrete discriminatory acts and have experienced a racially hostile work environment throughout their employment, including unlawful harassment for their entire periods of employment.

**7.**      All Plaintiffs allege that they have been denied promotion and advancement because of their race throughout their employment.

8.      All Plaintiffs allege that they have been intentionally discriminated against, and that they are entitled to compensatory damages and punitive damages.  All African-American Plaintiffs assert that CLECO has engaged in unlawful discrimination with malice or with reckless indifference to the federally protected rights to which they are entitled.

9.      The disciplinary system for employees of CLECO had a disparate impact on Plaintiffs based on race, color, age, and/or gender.

10.      Plaintiffs allege that the wrongful acts pled herein were either intentionally, directly or tacitly ratified, approved, encouraged, and endorsed by Executive Officers, and management personnel of CLECO, or alternatively, the intentional discriminatory acts of agents and employees were ignored by upper and middle management with negligence and gross negligence, which negligence contributed the cause the harm and damages and the basis of this complaint, as follows:

11.      Plaintiffs allege that the there has been a continuing pattern of discrimination at CLECO against Plaintiffs and African-American employees that continues to exist at the filing of the Complaint.

12.    **GREGORY WILLIS** is a resident of Rapides Parish.  His date of birth is January 6, 1964.  His race is African-American.  He has a Bachelor of Arts in Political Science and a Master of Public Administration from Grambling State University. He began his employment at CLECO in December of 2000 Greg Willis was retaliated against for complaining of racially discriminatory behavior by Management.  Mr. Willis was wrongfully terminated because of his race on or about February 4, 2009.

13.    **EDDIE CULBERT** is a resident of Rapides Parish, Louisiana.  His race is African-American.  His date of birth is June 24, 1953.  At all times relevant to this claim he was a CLECO employee.  He began employment with CLECO on May 1978 after receiving an Honorable Discharge from the United States Air force.  Mr. Culbert was constructively terminated when he was forced to resign in July 2008 because after 30 years of working in an unreasonable and unbearable racist environment at CLECO.

14.    **RONALD SMITH, SR.,** is a resident of Rapides Parish.  His date of birth June 6, 1967.  His race is African- American.  He has a Bachelor of Science degree in Business Marketing from Southern University, and a Master of Business Administration from the University of Phoenix.  Mr. Smith, Sr. is a Customer Account Manager for CLECO Power, LLC, a subsidiary of CLECO Corporation and he began his employment began at CLECO on October 2000.  Mr. Smith also is a Licensed Real Estate Agent and a Licensed Real Estate Appraiser.  Mr. Smith has served as Chairman of the Board for the Central Louisiana Business Incubator, and Chairman of the Rapides Primary Health Care Center.  He has served as President of the Alpha Phi Alpha Fraternity, Inc. local alumni chapter and is an Area Director for Alpha Phi Alpha's Central Louisiana District.  Mr.

Smith also served on the Board of the Boys & Girls Club.  Mr. Smith is a Charter member and former President of the Alexandria Pan-Hellenic Council.  Mr. Smith is also a United States Army Veteran.  Mr. Smith has consistently over the tenure of his career been denied promotion based on his race.  He has witnessed white employees with less experience than he, be promoted.  Mr. Smith has complained of unfair treatment of African-Americans and CLECO retaliated against him for it.  Mr. Smith continues to suffer from a continuing pattern of discrimination by CLECO.

15.    **ROY HUDSON** is a resident of Desoto Parish.  His date of birth August 12, 1962.  His race is African-American. Mr. Hudson attended Alcorn State University on a full scholarship. Mr. Hudson began his career at CLECO in February 1988. Throughout Mr. Hudson career he was denied promotions because of his race and subjected to a hostile working environment.

16.    **JENNIFER HILL** is a resident of Avoyelles Parish.  Her date of birth is December 29, 1963.  Ms. Hill has a Bachelor of Science degree in Computers and Information Systems from Northwestern State University, a Master of Science degree in Computer Science from Southwest University. Ms. Hill began her employment at CLECO in 2000.  She has worked as a Senior IT Analyst and a Senior Systems Analyst and Programmer. Over the life of her employment she has repeatedly been denied promotion based on her race and gender while similarly situated white employees with less experience and education has been given promotions that she was denied.

17.    **ISAAC JORDAN** is a resident of Rapides Parish.  His date of birth August 12, 1958.  His race is African-American.  Mr. Jordan has worked at the Rodermaker

Power Station in Lena, LA since December 5, 1984.  Mr. Jordan began his career at CLECO as a utility worker.  His present job title is Senior Fuel Handler Technician.  Mr. Jordan has been employed at the Rodemacher Power Station for twenty-five (25) years.  Over his 25 year tenure at CLECO Mr. Jordan has repeatedly been denied promotions because of his race and subjected to a hostile working environment.

18.    **JOHN MURCHISON** is a resident of St. Tammany Parish and an African-American.  His date of birth is February 1, 1957.  Mr. Murchison has a Bachelor of Science in Accounting and is seeking certification in Economic Development.  Mr. Murchison has worked at CLECO for 26 ½ years.  Over the tenure of his employment Mr. Murchison has applied for over 17 promotions.  He has been consistently denied promotion because of his race, while CLECO has promoted similarly situated white employees with less experience, education and tenure than Mr. Murchison.  Mr. Murchison has complained of discrimination against he and other African-American employee and CLECO has retaliated against him for it.

19.    **THOMAS JONES, Jr.** is a resident of Desoto Parish and is an African-American.  His date of birth is October 12, 1960.  Mr. Jones has a Bachelors Degree in Computer Science with Mathematics.  Mr. Jones was promoted to Supervisor of Fuel Handling in 1993, the position he remains in today.  He began his employment at CLECO in August of 1985.  In 1989 Mr. Jones was selected to Company's 3-yr. Professional Development Program (Prep. for Company Management).  In 1995 Mr. Jones was selected to Company 19-Member Leadership Team (Based on Reputation as a Model Leader).  The same year he was recognized as Leader with Highest Leadership

Scores in the Company for all 3 years the survey was conducted.  However, since his employment at CLECO, Mr. Jones has been denied promotions based on his race while similarly situated white employees with less education and experience have been promoted.  Mr. Jones has and continues to receive lower compensation than similarly situated white employees.  Mr. Jones has complained of discrimination and CLECO retaliated against him for it.

20.    **CALDWELL BURGESS,** resides in Rapides Parish and is an African-American.  His date of birth is December 6, 1948.  Mr. Burgess studied 3/12 years at Southern University, majoring in Business Administration and studied Political Science at Northwestern University in Illinois.  In February 2006 Mr. Burgess was constructively terminated from CLECO as he found the working conditions so unreasonable, he retired.  Mr. Burgess began his employment at CLECO in 1984.  Mr. Burgess discrimination occurred due too lower pay and he failed to be promoted because of his race.  When he complained of discrimination he was retaliated against by CLECO.

21.    **KELSOW WILLIAMS, Jr.** is a resident of Avoyelles Parish.  He is an African-American and his date of birth is September 14, 1966.  Mr. Williams attended Grambling State University and majored in Industrial Electronics.  Mr. Williams began his employment at CLECO in 1991 as an Apprentice Line Mechanic.  Williams is currently a Sr. Line Mechanic.  Throughout his tenure at CLECO he has been subjected to a hostile working environment and failure to be promoted because of his race.  When Mr. Williams complained of discriminatory treatment, he was retaliated against by CLECO.

22.   **STAFFORD WILLIAMS,** is a resident of Rapides Parish.   He is an African-American.  His date of birth is February 17, 1952.  Mr. Williams was employed at CLECO Corporation from 1985 – 1988 as a Utility Worker/ Plant Operator.   Mr. Williams attended Louisiana. College in 1972 and LA State University of Alexandria, 1973-1974.  He attended South Central Bell various education courses; Technical, Mechanical and Managerial.   Military Experience; 1970-1973 Vietnam Era Veteran; Airborne Ranger, Metals, National Defense Service, Parachutist, Vietnam Service, Vietnam Campaign Combat, Infantryman, Purple Heart, & Expert Rifleman.   Work Experience; 1967-1970 worked with his father during Summers/Weekends and Heavy Equipment Operator/ Construction Worker.  1970-1973-Military U.S. Army Active duty and US Army Reservist.  1972-1985 South Central Bell (Lineman) 1972-1973 Installer Repairman, 1973-1979.  Supervisor Motor Vehicle Maintenance, 1979-1985.  CLECO 1985-1988 Utility worker/Plant Operator.  Mr. Williams was employed at CLECO Corporation from 1985 – 1988 as a Power Plant Mechanic.  During that time he received superb performance appraisals and left the company on his own accord.  During the spring of 2008, CLECO ran a recruitment advertisement on a local radio (minority) station stating they were recruiting for their new power station in Lena Louisiana and they were an Equal Opportunity Employer.  Mr. Williams applied for the position and was denied because of his race and age.

23.   **VANDA WILLIS** is a resident of Rapides Parish.   She is African-American.  Her date of birth is March 14, 1966.  She graduated from Louisiana Tech University with a degree in Business Administration and a minor in Finance.  Ms. Willis

is married to Greg Willis. CLECO has subjected Ms. Willis to harassment and discriminatory discipline in retaliation for GREG WILLIS complaining against CLECO for discriminating against African-Americans.

## FACTUAL BASIS FOR CLAIMS

### (General Facts Underlying Claims of Racial Discrimination, Failure to Promote, Wrongful Discharge, Hostile Work Environment, Age Discrimination and Retaliation)

24.    In Defendant CLECO Corporation's (CLECO) workforce, racist and discriminatory comments, conduct, and adverse treatment, were tolerated and even encouraged by management.

25.    In CLECO's workforce, African-American employees were routinely denied promotion while promoting similarly situated white employees with less experience, education and training.

26.    In CLECO workforce, African-American employees who complained about discrimination were retaliated against, discriminately disciplined and terminated.

27.    CLECO African-American employees were subjected to pervasive and severely racist comments, conduct, and treatment including but not limited to the following:

      a. The late Rudy Bordelon was the supervisor of the coal yard at Rodemacher Power Station in Lena, LA would not allow two African American employees to work on the same shift. Mr. Bordelon on

numerous occasions said "the blacks were not to be trusted because Blacks will lie, steal and are lazy."

b. The late Rudy Bordelon was the Supervisor of the coal yard at Rodemacher Power Station in Lena, LA stated "black women's hair is nappy and hard and that is the reason black men do not have oral sex with them because it would be like eating a brillo soap pad."

c. Robbyn Cooper, Corporate Communications Representative stated to Cleco's General Manager of Human Resources & Safety:

**"Why are we trying to partner with Grambling? Those black students are lazy and would do a poor job if hired. In addition what are they going to do if not hired? Go to the NAACP or go to the OFCCP like the current blacks employee did."**

d. Ed Taylor the Director of Human Resources stated that the reason why there were no African-American employees in Management was because African-Americans were not qualified.

e. At least two hanging nooses were left on Company property, when black employees complained John Melancon General Manager of Human Resources asked "why are y'all offended"

f. Supervisor Terry Bonette told a black employee that he was on his "shit list" and that "I know about you and the company...I don't need you over here."

28.     African-American employees had to take direction from a Supervisor known for his retaliation against African-American employees who complained of discrimination.

29.     African-American employees were routinely denied promotions based on there race.  CLECO would promote a minimal number of African-Americans to low supervisor jobs in order to cover up their racially discriminatory motives.

30.     African-America employees were disciplined and terminated for even minor infractions of company policy while white employees who committed the same infractions received less or no discipline.

31.     Despite repeated notices, CLECO failed to take timely or sufficient remedial actions to curtail racial discrimination, hostile work environment and retaliations in its operations in Louisiana.

## FACTS SUPPORTING CLAIM OF GREG WILLIS

32.     Greg Willis is a resident of Rapides Parish, Louisiana.  His date of birth is January 6, 1964.

33.     He began his employment at CLECO in December 2000.  During his employment at CLECO he suffered discriminatory and retaliatory discipline, including termination.

34.     Sometime in February of 2007, Mr. Willis overheard John Melancon General Manager of Human Resource and Safety and Robbyn Cooper, Corporate Communications Representative make racist statements about African-American students

who had graduated from Grambling State University, a historically black college. Cooper stated that:

> **"Why are we trying to partner with Grambling? Those black students are lazy and would do a poor job if hired. In addition what are they going to do if not hired? Go to the NAACP or go to the OFCCP like the current blacks employee did."**

35.     When Mr. Willis complained to Management of the offensive racist comments, he was retaliated against. John Melancon began requiring Willis to write activity reports when he attended conferences. No white employees with similar job responsibilities were required to submit activity reports when they attended conferences.

36.     Taylor refused to let Willis attend any additional conferences that dealt with diversity, even though he was the Diversity Project Manager.

37.     After several months of being subjected to retaliation by Mr. Melancon, Mr. Willis went to his immediate supervisor Ed Taylor stating that John Melancon (Taylor's immediate supervisor) was treating him differently because he reported the racist comments made by Cooper. Taylor dismissed Willis compliant and stated, **"You should not have reported John to George."**

38.     Sometime in April 16, 2007, Mr. Willis received a written disciplinary warning when he sent an email out concerning a fellow employee ill adult son. The written disciplinary warning was issued without talking to Mr. Willis or the employee. Taylor told Willis he had violated the Health Insurance Portability and Accountability Act (HIPPA) Mr. Willis stated to Taylor**,** the employee's son is not on CLECO insurance and so it is impossible that he violated HIPPA**.**

39.     A white employee had sent out a similar email relating to a co-workers medical condition and she did not receive a written disciplinary warning letter.

40.     Sometime in 2006, Mr. Willis wrote a letter to the Chairman of The Board of Directors and Chief Executive Officer complaining of discriminatory hiring and promotional practices at CLECO.

41.     In 2007, Mr. Willis was placed on a Work Improvement Plan by Taylor because employees were making to many calls to the Ethics Hot Line at the Dolet Hills Power Station.  Willis objected that he had no control of employees filing complaints but he remained on Work Improvement Plan.

42.     In October 2007, John Melancon received a complaint that black male employees had found a hangman noose in the Crowley Work Center. Mr. Melancon reluctantly investigated the noose incident seventy two (72) hours after he was initially notified of this horrendous matter.  Mr. Kelso Williams, Sr. Line Mechanic reported to Mr. Willis that he "was afraid for his life".   While investigating the incident along with John Melancon, a white employee acknowledged to Melancon and Willis that he said to Kelsow Williams the following:

> **"What are you doing, plotting against the white man?**
> **This ain't no Jena 6, get over here"**

43.     On January 30, 2009, Willis was accused by Human Resource Manager Ed Taylor and John Melancon of threatening the employment of Franklin Sylvia III, a black male, power plant tech employee at CLECO.  Mr. Willis denied the charge as ludicrous.

44.     On February 3, 2009, Ed Taylor tried to coerce Mr. Willis into changing his story and he refused.

45.      On February 4, 2009, he was terminated for allegedly threatening the employment of an employee who he had absolutely no institutional control over.

46.     In fact Mr. Willis was terminated because he is African-American and he had complained of a continuing pattern of racial discrimination at CLECO.

47.     Upon his termination CLECO denied him unemployment benefit.  At the Unemployment hearing Franklin Sylvia III denied under oath that Mr. Willis had threatened him.  The Hearing Officer found that the reasons that CLECO had given for termination was not true and granted Mr. Willis his employment benefits.

48.     CLECO appealed the decision to the Administrative Judge who upheld the Hearing Officer ruling and granted Mr. Willis his unemployment benefits.

49.     CLECO continued to retaliate against Mr. Willis by denying him a bonus under CLECO Corporation Employee Incentive Program for his 2008 work because the company stated he had been terminated.

50.     On October 16, 2009, CLECO retaliated against Mr. Willis by falsely accusing his wife Vanda Willis, an employee of CLECO of violating company policy.

51.     Mr. Willis complained about discrimination and was retaliated against. Similarly situated Caucasian employees received less or no discipline compared to Mr. Willis**.**

52.     Mr. Willis has past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

53.     Mr. Willis is entitled to punitive damages.

54.     Mr. Willis has opposed discrimination at CLECO; *inter aila* by filing Louisiana Commission of Human Rights charges and encouraging other workers to file EEOC charges opposing discrimination.

55.     Mr. Willis has suffered racial discrimination; hostile work environment discrimination; and retaliation because of his complaint of discrimination.

## FACTS SUPPORTING CLAIMS OF EDDIE CULBERT

56.     Mr. Culbert alleges all the general facts above and in addition alleges:

57.     **EDDIE CULBERT** is a resident of Rapides Parish, Louisiana.  His race is African-American.  His date of birth is June 24, 1953.

58.     Over the tenure of his work experience Mr. Culbert trained white employees with less experience than he, only to watch those employees go on to be promoted to higher jobs and receive higher salaries.

59.     Mr. Culbert was forced to sign unfavorable performance evaluations in order to keep his job at CLECO.

60.     Mr. Culbert complained to Management for decades of the racist treatment that he and other black employees faced at CLECO and management turned a deaf ear and sometimes actively encouraged the hostile environment.

61.    Mr. Culbert filed an EEOC complaint in 1981 and management retaliated by harassing him because he was African-American.

62.    At each annual appraisal with management Mr. Culbert informed Management of the racist treatment he and other black employees were facing and Management never investigated or took any remedial action.

63.    In 1981, Mr. Culbert found himself stuck as a Utility Worker and he was forced to file a compliant with the EEOC.  Mr. Culbert was retaliated against and labeled a trouble maker by Management because he filed a complaint with the EEOC and was African-American.

64.    Mr. Culbert worked in various maintenance jobs over his career but was paid the lower salary of a utility worker.   For the entire tenure of Mr. Culbert employment at CLECO he was paid less than similarly situated white employees because of his race.

65.    During Mr. Culbert tenure at CLECO he and other black employees at the Rodemacher Power Station were treated different than white employees because of their race.  Black employees were terminated for the most minor of infractions while white employees were given preferential treatment in disciplinary matters, and performance evaluations regardless of their work performance.

66.    Mr. Culbert for all of his tenure was forced to work in debilitating racist conditions that took a toll on him both emotionally and physically.

67.    Mr. Culbert was allowed to work as a power station operator, the basic responsibilities of his operator position were to assure that the general operation systems

were performing properly.  He was not given an opportunity to work and learn the operation of the controls and instruments inside of the control room area, which basically consisted of firing the boiler because he is African-American.  Mr.  Culbert was told to work outside of the control room area only, where he was subjected elements of the weather.

68.    Even after becoming an operator, he was often assigned to work plant maintenance positions, while his white coworkers with fewer years experience and time with the company were allowed to maintain their operator positions within the control room.  This resulted in Mr. Culbert receiving less pay and advancement than similar situated white employees.

69.    In 1994, Mr.  Culbert reported to Human Resources about the discriminatory treatment he and other African-American employees were enduring and management failed to take any action.

70.    Sometime in 2002, Mr. Culbert was on Medical Leave but was contacted by his supervisor Raymond Tassing and coerced into coming to work although he was sick.  Mr. Culbert knew after the conversation if he did not report to work he would be terminated.  No white employee who had worked in the Plant had ever been forced to come to work when they were on Medical Leave.

71.    In 2002, the pervasive racist working conditions at CLECO became so unbearable he sought Psychiatric Counseling.

72.     The atmosphere in the Rodemacher Power Station  was so racially charged that Mr. Culbert was forced to eat his lunch and take breaks in the bathroom or utility room rather than being forced to listen to white employees engage in telling racist jokes.

73.     Whenever an opportunity for promotion came, Mr. Culbert was discouraged by his white supervisors from submitting his name for promotion because he was African-American.

74.     Mr. Culbert worked in the Plant from 1978 to 2008 for the entirety of his tenure, there were no African-Americans promoted to a managerial position because of race.

75.     Mr. Culbert was only fifty-five (55) years of age when he retired in 2008. He had no choice because he was suffering from emotional and physical injuries as a result of the racist work environment at CLECO.

76.     Mr. Culbert was effectively forced from his job because of 30 years of ongoing racist hostile work environment with management active encouragement and because of lack of opportunities to advance.

77.     Mr. Culbert over his 30 year career at CLECO has been subjected to a continuing violation of racial discrimination in promotions and hostile racial environment.

78.     Plaintiff is entitled compensatory and punitive damages based upon racial discrimination, retaliation and hostile work environment.

**FACTUAL BASIS SUPPORTING THE CLAIM OF RONALD SMITH, SR.**

79.     Mr. Smith alleges the above facts and in addition alleges:

80.     **RONALD SMITH, SR.,** is a resident of Rapides Parish.  His date of birth June 6, 1967.  His race is African-American.

81.     During the 1st quarter of 2003, Mr. Smith met with a Human Resources General Manager to discuss his employment situation.  The HR GM told him that there was a perception that he was overly ambitious and aggressive.  She explained to Mr. Smith that ambition is viewed as negative at CLECO.  This was done to discourage Mr. Smith an African- American from seeking advancement.

82.     During this same period Mr. Smith met with Director of Employee Development, Ed Taylor and stated to him he felt the company had racist's undertones, and asked why there weren't more minorities on track for senior management positions.  Mr. Taylor stated that there were no qualified African Americans in the company.

83.     Shortly after that exchange with Mr. Taylor, CLECO began to retaliate against Mr. Smith by undertaking an audit of his business expenses.  These were general operating expenses and phone expenses that were sent to and previously approved by Mr. Smith's manager.  Mr. Smith explained every transaction in detail and Mr. Smith was told to ensure he explain everything thoroughly in the future.

84.     Mr. Smith investigated the same transactions himself with an accounting employee and found no irregularities.  White employees, with fewer details than he initially provided, were never scrutinized to such extent, and never sent to Internal Auditing for further investigation.  This action was taken against Mr. Smith to harass him because he was African-American.

85.     In the Second Quarter of 2004, Mr. Smith held the position of Director of Customer Revenue and Quality Assurance.  During that same period a General Manager position became available in Customer Services/Energy Delivery Section.  The position of General Manager was not posted for all employees to apply.  Only individuals that Sr. Management and Human Resources, deemed qualified were invited to interview for the positions of General Manager.  Among the "qualified", there was only one African-American chosen to interview.  Mr. Smith asked to meet with Mr. Anthony Bunting, a white male who had been recently promoted to Vice-President of Customer Services/Energy Delivery regarding one of the General Manager positions, but was unsuccessful at gaining his agreement to meet.

86.     Mr. Smith then wrote Mr. Bunting a letter, which he hand delivered to him, asking him to consider him for the General Manager position, even if it meant him having to relocate.  Mr. Smith did not receive a response to his letter from Mr. Bunting, nor an invitation to interview for the General Manager positions, because of his race.

87.     Mr. Smith subsequently learned that, Kristi McEntyre, a white female had been selected as General Manager of Central Services, Kristi.  Mrs. McEntyre had no previous experience in Centralized Services, nor did she have the educational and experience background of Mr. Smith who was denied even an opportunity to interview for the position because of his race.

88.     On November 28, 2004, Mr. Smith was asked to a meeting with the Central Services General Manager (Mrs. McEntyre), where Mr. Smith was told that his position had been eliminated Company Realignment.    Mr. Smith was told that various

departments and functions that he managed would be disbanded or realigned with other departments within CLECO Power.  When Mr. Smith questioned the business reason behind the decisions, the General Manager was unable to provide plausible business reasons for the changes.

89.    The realignment was a pretext to discriminate against African-American employees.  Mr. Smith areas of responsibility included five (5) departments and one (1) function.  Mr. Smith had 13 employees under his supervision at the time of the realignments.  Six of Mr. Smith's thirteen employees were minorities, while seven employees were Caucasian.  Of the six minorities, four were reassigned to jobs in which they are overqualified.  Three of the four minorities lost annual wages as well.  They were all placed in a salary bracket where they are already at the maximum earning potential.

90.    As a result of the realignment, Mr. Smith also lost annual wages and was relegated to accept a field marketing position.  Mr. Smith was not placed in a management position as other similarly situated white managers were during the realignment, even though Mr. Smith had several years of supervisory experience with CLECO and other companies, and an MBA.

91.    As a result of this racist behavior by CLECO Mr. Smith was placed in work at a lower pay grade, without possibility for management incentive.  His salary was cut by $1,805 annually.  Additionally, his compensation package was cut by thousands of dollars as a result of long term incentives of restricted and common stock grants.

92.     In 2005, Mr. Smith complained by Memorandum to Management about the inequalities that he and other black employees suffered as a result of realignment.

93.     Shortly after Mr. Smith complained, the General Counsel, Neal Chadwick (Sr. Vice-President) stopped him in the parking lot while he was loading his truck with personal and office belongings.   Mr. Smith was moving from the headquarters to a CLECO facility, which housed his new office less than 2 miles away.   Mr. Neal Chadwick asked to check Mr. Smith belongings to ensure he was not taking sensitive information from the company.   Mr. Smith reminded Mr. Chadwick that he was still an employee with CLECO and had every right to move his office belongings to the next CLECO location.   Mr. Chadwick stated to Mr. Smith that in light of his complaint letter, he had to check Mr. Smith belongings.   This was an act of retaliation because Mr. Smith had complained or racial discrimination.

94.     Mr. Smith reported this incident to the EEOC along with other complaints of racial discrimination.

95.     Sometimes in 2005, Mr. Smith applied for the position of Director of Credit and Collections and Customer Information Systems.   He was denied the promotion because of his race.   CLECO promoted a similarly situated white candidate with less experience than Mr. Smith.   The white candidate had no experience in the area and no supervisor experience.

96.     Sometimes in 2007, Mr. Smith again applied for a Management position. He was denied the promotion because of his race.   CLECO promoted a similarly situated white employee with less experience than Mr. Smith.

97.    In May of 2008, Mr. Smith applied for and was interviewed for the position of "Director of Contracts and Marketing".  Mr. Smith was interviewed by a Terry Spruill and Ben Russo who stated to him that  the minimum qualifications for this position was "college degree in finance, business administration or a related technical degree and/or NERC certification for System Operators, with 10 years experience in wholesale energy transactions.  He was denied the promotion because of his race.  Mr. Smith subsequently found out that he did not make the list of the top 3 candidates for the position.  Thus cancelling his ability to appeal the decision.  The position went to a similarly situated white male Donald Olinde, Jr. who does not have a college degree.  Mr. Smith has a Masters degree in Business Administration.

98.    In October 2008, CLECO attempted to harass Mr. Smith because of his race when Ed Taylor launched an investigation of Mr. Smith regarding a relationship with a co-worker by the name of Eve Moore (African-American female).  Ms.  Moore was a neighbor of Mr. Smith and told him that Ed Taylor specifically asked her about her relationship with Mr. Smith and asked was it an affair.  Mrs. Moore told him emphatically "no.

99.    Ms. Moore was deeply offended by such a false and pervasive invasion into her personal life.

100.    Mr. Smith over his career at CLECO has been subjected to a continuing violation of racial discrimination in promotions, and retaliation that exist to this day.

101.    Plaintiff is entitled compensatory and punitive damages based upon racial discrimination and discriminatory retaliation.

102.    Mr. Smith has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

103.    Mr. Smith has opposed discrimination at CLECO; *inter aila* by filing EEOC charges and encouraging other workers to file EEOC charges opposing discrimination.

104.    Mr. Smith has suffered racial discrimination; hostile work environment discrimination; and retaliation discrimination.

### FACTS SUPPORTING THE CLAIM OF ROY HUDSON

105.    Mr. Hudson alleges all the general facts alleged above and in addition alleges:

106.    **ROY HUDSON** is a resident of Desoto Parish.  His date of birth August 12, 1962.  His race is African-American.

107.    During Mr. Hudson's employment White employees would routinely use derogatory racial terms toward black co-workers.  For instance Mr. Hudson was told by a white employee "you have a pager you must be selling drugs."  These types of racist remarks were often done in the presence of management personnel and with their approval.

108.    Mr. Hudson applied for the position of power plant mechanic in Dolet Hills Power Station.  He was denied an interview because he is African-American.  The job went to a similarly situated white employee with less experience than Mr. Hudson.

109.   During the entire tenure of Mr. Hudson employment at CLECO, he and other black employees were stuck in low paying jobs with little or no opportunity for promotion.  When Mr. Hudson and other black employees complained about the lack of advancement of black employees they faced retaliation.  In 1991 when a white employee with less qualifications and experience was promoted over Mr. Hudson and other black employees.  Several black employees complained to Human Resources.  The black employees were threatened with loss of their jobs for complaining.

110.   In 2007, the company requested volunteers for the rescue team.  Black and white employees signed up and took the training courses.  But when the team was selected only white employees were selected.  Volunteering for the Rescue Team was seen as a proactive step to promotion but black employees including Mr. Hudson were denied this opportunity because he was African-American.

111.   In 2008, the company asked for volunteers to come and work overtime for a welding job.  Only white employees were called as the black employees were told they needed short guys to weld and the black employees were too tall.  Mr. Hudson was denied the opportunity for overtime because he is African-American.

112.   Mr. Hudson worked his entire career in the Dolet Hills Power Plant.  There has been and continues to be pervasive hostile working environment for black employees and the Management of the Plant for the most part has remained exclusively white because black employees were routinely passed over for promotion for similarly situated white employees with less experience.

113.   Mr. Hudson continues to be subjected to a continuing pattern of discrimination based on his race.

114.   Plaintiff is entitled compensatory and punitive damages based upon racial Discrimination, hostile working environment and discriminatory retaliation.

## FACTS SUPPORTING THE CLAIM OF JENNIFER HILL

115.   Ms. Hill alleges all the general facts alleged above and in addition alleges:

116.   **JENNIFER HILL** is a resident of Avoyelles Parish.   Her date of birth is December 29, 1963.   Ms. Hill has a Bachelor of Science in Computer and Information Systems from Northwestern State University, a Masters of Science from Southwest University.   Ms. Hill began her employment at CLECO in 2000.   She has worked as a Senior IT Business Analyst and a Senior Applications Systems Analyst/Programmer.

117.   In Ms. Hill initial interview she was bluntly told she was not being interviewed for a lead Sr. Analyst job.   She was told by a white co-worker that you "are just like the rest of them, you are as high as you are going to go.   Ms. Hill took this statement to mean that a 'black' would never be a Lead Sr. Analyst.

118.   In 2007, Ms. Hill reviewed her personnel file and was shock to learn that her highest degree listed was a Bachelor's degree and no mention that she was one of the few employees working in her department with a Master of Science degree.   This was done in order to stymie Ms. Hill advancement because she is African-American.

119.   Sometime in April – May 2008, time frame, Ms. Hill applied for the position of General Manager of Technology Services.   Ms. Hill was denied promotion

because of her race.  The position was given to a similarly situated white male Troy West, who had less IT Application experience than Ms. Hill.

120.   Sometime in March 2009, Ms. Hill applied for the position of Manager of Application Services.  Ms. Hill was denied promotion because of her race.  The position was given to a similarly situated white male, Keith Duplantis, who had less educational experience than Ms. Hill.

121.   Sometime in May 2009, time frame, Ms. Hill applied for the position of Lead IT analyst.  Ms. Hill met with Keith Duplantis (former IT lead analyst, current Applications Manager). During the 2nd interview review meeting, Duplantis told Ms. Hill that he had gotten feedback from someone regarding her and told her she was "too direct".  Duplantis had done Ms. Hill's Performance Reviews and Appraisals since 2000 and not one time did he mention that she was "too direct" or had any other weaknesses that she needed to address. Ms. Hill told him that she was surprised and his explanation sounded like something was fabricated to hinder her advancement. Ms. Hill was denied promotion because of her race.  The position was given to a white male, Gary Mayeaux, who had less experience than Ms. Hill.

122.   In June of 2009, Ms. Hill met with George Bausewine, a Senior Vice President who told her that she was being denied promotions because she was too assertive.  Not one time was Ms. Hill ever evaluated in a performance review as being "to assertive."  This was a manufactured reason to deny Ms. Hill promotions based on her race.

123.    Ms. Hill has consistently received stellar performance reviews but has been consistently denied promotion because of her race.

124.    Ms. Hill applied for three internal departmental promotions and was rejected each time for promotion, despite having an educational background, technical qualification and prior work experience that exceeded those listed as the minimum for the open positions.  Ms. Hill was denied the promotions because of her race.  In each case the promotions have gone to similarly situated white employees in which Ms. Hill was the only one with a Master of Science in Computer Science Degree.

125.    During Ms. Hill tenure at CLECO there have never been any African-Americans promoted to a management positions in her Department because of their race.

126.    There is one female manager in IT, a white female Jessica Viator who does not have a college degree.

127.    Plaintiff is entitled compensatory and punitive damages based upon racial discrimination.

128.    Ms. Hill has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

129.    Ms. Hill has suffered racial discrimination; gender discrimination; hostile work environment discrimination; and retaliation discrimination.

## FACTS SUPPORTING THE CLAIM OF ISAAC JORDAN

130.    Mr. Jordan alleges all the general facts alleged above and in addition alleges:

131.    Mr. Jordan was subjected to the hostile work environment described above and herein and was repeatedly denied promotion based on his race.

132.    Rudy Bordelon was the supervisor of the coal yard for the majority of Mr. Jordan 25 years of service until his death in 2007.

133.    Mr. Bordelon stated to black employees that two black employees could not work on the same shift because "the blacks were not to be trusted because Blacks will lie, steal and are lazy."

134.    Mr. Bordelon would routinely make openly racist statement while telling jokes about African Americans.  In one instance he said that black women's hair is nappy and hard and that is the reason black men do not have oral sex with them because it would be like eating a brillo soap pad.

135.    Mr. Bordelon with the knowledge of Senior Management subjected Mr. Jordan and other African-American workers to racial epithets until his death in 2007.

136.    CLECO and Mr. Bordelon created an atmosphere were Mr. Jordan and other black employees felt angry, degraded and were afraid speak out for fear of losing their jobs.  At one time there were seventeen (17) employees in the department, five (5) black employees and twelve (12) white employees.  There were three (3) black fuel handler techs and seven (7) white fuel handler techs; two (2) white mechanics, two (2) black utility workers and three (3) white utility workers.  Over a period of a few years, the number of blacks in the department went from five to one.  One died of a terminal illness and the other four were terminated for one reason or another, leaving Mr. Jordan as the only black fuel handler for the last 24 years.

137.    Over his 25 year tenure Mr. Jordan only used two (02) days of sick leave. He consistently received high satisfactory to outstanding ratings from his supervisor during his performance evaluations each year but despite applying numerous times for lead supervisor, he was denied promotion because of his race.  While similarly situated white employees with less experience were promoted, many of whom Mr. Jordan had trained.

138.    Sometime in 2002, CLECO decided to make five lead fuel handlers lead supervisors in the department.  There were ten fuel handlers in the department to choose from, seven whites and three blacks.  The selection of employees for the lead position was made by the supervisor Mr. Bordelon.  All five leads selected were white.  This was despite the fact that Mr. Jordan had the same amount of time on the job as those selected and had as good if not better job performance.

139.    Even through Mr. Jordan experience and skill set was at a higher level than most of the white employees that had been promoted ahead of him, he took it upon himself to seek courses to advance his education and build his skill sets specifically related to the coal yard.  However, Supervisor approval was required in order to be able to take the classes.  Mr. Jordan was told he could not take the classes by management. Mr. Jordan was denied the opportunity to take the classes because of his race.

140.    Sometimes in 1992, an employee retired from Mr. Jordan's Department, and as a result, there was an opening for a lead fuel handler.  When it was time to make the selection for the position, management created a new process for the selection of the employee.  Mr. Bordelon set up a committee which was comprised of five senior fuel

handlers all who were white to make the selection. Five Senior Fuel Handlers applied for the position, four white employees and Mr. Jordan the only African-American in the Department. The job was given to Mike Lachney. Mike Lachney had 8 years of service, while Mr. Jordan had 15 years of service at that time. Mr. Jordan failed to receive a promotion while the job went to a similarly situated white employee with less experience.

141.    When blacks were deemed to not measure up they were fired. However, white employees were treated differently. Jim Risner is a white male, who was hired as a chemist, but due to continued poor job performance and mistakes as a chemist, he was reassigned to the coal yard, initially as a material handler. As a material. Handler he was not able to successfully learn and perform his duties. He was placed on an extended orientation program, far longer than normal, but was still not able to learn and work independently as a material handler. As a result, Mr. Risner was again reassigned, this time as a utility worker, but even as a utility worker. Mr. Risner often made mistakes and had a difficult time learning and performing the duties of his job. As his supervisor, Mr. Bordelon overlooked and often made excuses for Mr. Risner's poor performance. He was allowed to continue to work as a utility worker until he retired. No African-American employee had ever been given the repeated opportunities to succeed that Mr. Risner had.

142.    After the sudden death of Mr. Bordelon in 2007, the job as the supervisor for the coal handler department became available. Mr. Jordan applied for the position. Mr. Jordan was again passed over for promotion because of his race and the company

promoted a similarly situated white employee with less time and experience in the coal yard than Mr. Jordan.

143.    There are approximately 200 employees at the Rodemacher Power Station and there are **NO African Americans** in any management positions.  Management has consistently denied Mr. Jordan and other African-America employees promotion because of their race.

144.    Mr. Jordan has suffered from a continuing pattern of discrimination because of his race that continues to this day.

145.    Mr. Jordan has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

146.    Mr. Jordan is entitled to punitive damages

147.    Mr. Jordan has opposed discrimination at CLECO; *inter aila* by encouraging other workers to file EEOC charges opposing discrimination.

148.    Mr. Jordan has suffered racial discrimination; hostile work environment discrimination; and retaliation discrimination.

### FACTS SUPPORTING THE CLAIM OF JOHN MURCHISON

149.    Mr. Murchison alleges all the general facts alleged above and in addition alleges:

150.    **JOHN MURCHISON** is a resident of St. Tammany Parish and an African-American.  His date of birth is February 1, 1957.

151.    In 1984/85, Mr. Murchison applied for position in Fuels Management along with 3 other white candidates.  Mr. Murchison was denied the promotion because of his race.  While a similarly situated white candidate was promoted with less experience.

152.    In 1993, Mr. Murchison also applied for Supervisor – Residential & Commercial Sales.  Mr. Murchison was never granted an interview.  Mr. Murchison was at the associate level and was very successful in selling CLECO'S Power Miser home program a prerequisite for promotion.  Mr. Murchison was denied the promotion because of his race.  Sharon Robertson, a non degreed white female was promoted to senior level with less tenure in the department and less market results than Mr. Murchison.

153.    In 1995, Mr. Murchison learned that Sharon Robertson a white female who was a non degreed sales representative and was making considerably more money than Mr. Murchison even though she had less tenure and less market results than Mr. Murchison.  Mr. Murchison was paid less because of his race.

154.    In 1997, Mr. Murchison applied for Governmental Services Representative-Opelousas and he was not selected.  Mr. Murchison was denied the promotion because of his race.  The position went to a similarly situated white employee, Kim Fontenot who was not degreed and has less experience than Mr. Murchison.

155.    In 1998, Mr. Murchison applied for Manager Customer Service Marketing and was not selected.  Mr. Murchison was denied the promotion because of his race.  The position went to a similarly situated white employee Brady Baudin.

156.    In 1998, Mr. Murchison applied for Manager Call Center – Pineville and was not selected.  Mr. Murchison was denied the promotion because of his race .The

position went to a similarly situated white employee Linda Woodruff who had only two years of college and less experience than Mr. Murchison.

157.    In 1999, Mr. Murchison applied for Manager Residential Sales and was not selected.  Mr. Murchison was denied the promotion because of his race .The position went to a similarly situated white male employee Scott Biggers.  In the same year Mr. Murchison applied for Manager Governmental Services and did not even receive an interview because of his race.

158.    In 2002, Mr. Murchison applied for Competitive Compliance Specialist and was not selected even though the position required expertise in LPSC regulations as it relates to competition with other Utilities.  Mr. Murchison was denied the promotion because of his race.  Mr. Murchison had extensive experience in this arena; however position went to Hershel Lonider, and a similarly situated white employee with less experience than Mr. Murchison.

159.    In the same year, Mr. Murchison applied for Director – Economic Development, and was not selected.  Mr. Murchison was denied the promotion because of his race .One of persons selected over Mr. Murchison was Timothy Holloway, a white employee who had less experience than Mr. Murchison.  Mr. Murchison appealed the selection to Joe Gaston but subsequently requested that his appeal be dismissed due to being retaliated against.

160.    In the same year, Mr. Murchison applied for Manager- Residential & Commercial Development and was not selected.  Mr. Murchison was denied the promotion because of his race.  The position went to a white employee Cheri Minckler.

161.    In 2005, Mr. Murchison applied for Manager- Customer & Community Services – Eastern District and was not selected.   Mr. Murchison was denied the promotion because of his race.  The position went to a similarly situated white employee Scott Biggers.

162.    Around May 2005, Mr. Murchison was contacted and asked to meet the General Manager Kim Fontenot at the request of Vice-President Anthony Bunting and Senior Vice-President Jeff Hall in Opelousas to discuss managing and renewing CLECO Operating Agreement with the City of Opelousas.  There had been some discussion and approval by Executive Management to contact Mr. Murchison.  The city is 75% African-American with an all African-American City Council and Mayor past and present.  The position required a college degree and called for a skill set few in the company had.  Mr. Murchison requested a similar pay package that past white employees had received for comparable work and position.  CLECO offered Mr. Murchison a compensation package that would have been a third less than what white employees were making in a similar job and responsibility.  He asked to be paid what similarly situated white employees would be making.  He was never contacted by CLECO again for the position.

163.    In early 2009, Mr. Murchison applied for a General Manager Position when GM Kim Fontenot and George Comeaux were removed from their position.   Mr. Murchison sent an email to both Vice President Anthony Bunting and President Delik Samil.  There was no posting of the position and the only way to be considered was via email.  Mr. Murchison was denied the promotion because of his race.  The position was

given to a similarly situated white employee who had equal or less qualifications than Mr. Murchison**.**

164.    Mr. Murchison has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

165.    Mr. Murchison has suffered from a continuing pattern of discrimination to this day because of his race.

166.    Mr. Murchison is entitled to compensatory and punitive damages.

167.    Mr. Murchison has opposed discrimination at CLECO; *inter aila* by encouraging other workers to file EEOC charges opposing discrimination.

168.    Mr. Murchison has suffered racial discrimination; hostile work environment discrimination; and retaliation discrimination.

## FACTS SUPPORTING THE CLAIM OF THOMAS JONES

169.    Mr. Jones alleges all the general facts alleged above and in addition alleges:

170.    Mr. Jones is a resident of Desoto Parish and is an African-American.  His date of birth is October 2, 1960.

171.    Mr. Jones has been denied promotions based on his race while similarly situated white employees with less education and experience have been promoted.

172.    In 1991, Mr. Jones interviewed for Administrative Supervisor position at the Dolet Hills Power Station.  He was not selected.  He was denied promotion because of his race.  The position was given to a similarly situated employee who had less education and experience than Mr. Jones.

173.    In 2000, Mr. Jones applied for Plant Manager's Position at Dolet Hills, he was not selected.  He was denied promotion because of his race.  The position was given to Steve Carter, a white male, Promoted with less than two years management experience.  Mr. Jones had twelve years of management experience.

174.    In 2000, Mr. Jones applied for Operations Manager Position at Dolet but he was not selected.  He was denied promotion because of his race.  The position was given to Arthur Touchton, white male with no departmental managerial experience.  Mr. Jones had been a department head for over 7 years.

175.    In 2001, Mr. Jones applied for H. R. Manager Position but was not selected. He was denied promotion because of his race.  The position was given to an outside applicant who was a white male.  Mr. Jones had been with the company, and had a better education.  The white male given the position was subsequently terminated.  Mr. Jones remains with the company.

176.    In 2002, Mr. Jones applied for Plant Manager's Position at Dolet but was not selected.  He was denied promotion because of his race.  The position went to Pat Dupuy, a similarly situated white male employee.   Mr. Jones had more managerial experience working in a Power Plant.

177.    In 2003, Mr. Jones applied for Plant Manager's Position at Rodemacher Power Plant.  But was not selected.  He was denied promotion because of his race.  The position went to Robert St Romain, a similarly situated white male employee.  Mr. Jones had more managerial experience in Power Plants.

178.    In 2005, Mr. Jones applied for Plant Maintenance Manager at Dolet but was not selected.  He was denied promotion because of his race.  The position went to Marty Robinson, a similarly situated white male employee who had 8 years supervisory and no college degree.  Mr. Jones had 12 yr. supervisory/managerial experience and a Bachelors Degree in Computer Science with a Mathematics Minor.

179.    In September 2007, there was a restructuring initiative at Rodemacher Power Plant and it has always been procedure and protocol in CLECO to name the senior manager position first and proceed to fill the other positions in a top-down format.  Mr. Jones was in line to be Department Head; however, CLECO changed its historical process and did not name Mr. Jones as Department Head until a full year after the process has begun.  No similarly situated white supervisor in the history of the company was forced a year to be promoted under similar circumstances.  Mr. Jones promotion was delayed for a full year because of his race.

180.    Mr. Jones has been compensated less than similarly situated white supervisors in the Dolet Hills Plant 2003- 2009 because of his race.

181.    Mr. Jones communicated his concerns about discrimination to OFCCP.

182.    Mr. Jones complained to management about the lack of promotional opportunities discriminatory compensation based on his race.

183.    In March 2009, CLECO retaliated against Mr. Jones by placing a Disciplinary Letter in his file for not reporting a near miss incident.  White Supervisors have committed the same infraction and have never been subjected to disciplinary action.

184.   Mr. Jones has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

185.   Mr. Jones is entitled to punitive damages.

186.   Mr. Jones has opposed discrimination at CLECO; *inter aila* by complaining to OFCCP and encouraging other workers to file EEOC charges opposing discrimination.

187.   Mr. Jones has suffered racial discrimination; hostile work environment discrimination; and retaliation discrimination.

188.   Mr. Jones has faced a continuing pattern of discrimination.

## FACTS SUPPORTING THE CLAIM CALDWELL BURGESS

189.   Mr. Burgess alleges all the facts alleged above and in addition alleges:

190.   **CALDWELL BURGESS,** resides in Rapides Parish and is an African-American.  His date of birth is December 6, 1948.

191.   From the beginning of his Mr. Burgess career as a trader at CLECO the company began to undermine his ability to be promoted.  He was given inadequate training for the trading position and essentially had to learn on his own.

192.   In 2003, Mr. Burgess was moved from retail trading to wholesale trading were he discovered  that he was being paid one thousand dollars a month less than his white co-workers who were doing the same job, even though he had more tenure and experience than the white employees.  When Mr. Burgess complained he was told that he was receiving the same pay, which was not true. Mr. Burgess was paid less compensation than similarly situated white employees because of his race.

193.    Once Mr. Burgess complained about the discriminatory pay, CLECO began to retaliate against him because of his race.

194.    Kerry Spruill who was Mr. Burgess Supervisor began to make false statements to Human Resources about Mr. Burgess conduct.

195.    Kerry Spruill and his nephew Matthew Cripps accused Mr. Burgess had violated company policy by going on the Retail Floor.

196.    When Mr. Burgess complained that Kerry Spruill, Matthew Cripps and other white employees had went on the Retail Trading Floor and no disciplinary action was taken, the issue was dropped.  Mr. Burgess was subjected to different discipline because of his race.

197.    Sometimes in between 2002 and 2003, Mr. Burgess was told that he needed to pass the NERC exam.  However, Matthew Crips, a similarly situated white employee with less experience had taken and failed the NERC exam three times but he was appointed a Director.

198.    Sometimes in 2002,   Mr. Burgess was told that all employees in his section had to be NERC certified.  The white employees were sent to train at top courses outside of the State.  Mr. Cripps, a new hire was sent out of state for training Mr. Burgess was sent to train in St. Landry Parish and was not given the same time and aids to study as the white employees were because of his race.

199.    Within the Traders, similarly situated white employees received different discipline than Mr.  Burgess.  Mr. Burgess was cited for disciplinary action because he

purchased too much power which resulted in unauthorized use. Yet similarly situated white employees who would make the same error received no disciplinary action.

200.    Sometime in 2004, Mr. Burgess complained to Ed Taylor the Director of Human Resources about the unequal pay and working conditions that he and other African-American employees had to endure.  Mr. Burgess was told by Mr. Taylor he had investigated allegation s of racial discrimination and had found none.  Mr. Burgess was told by Mr. Taylor that Mr. Burgess pay would not be brought up to par with similarly situated white employees because of "salary suppression". This was a false pretext to mask CLECO real intent to discriminate against Mr. Burgess because he through African-American.

201.    Spruill and Cripp deliberately withheld information from Mr. Burgess that was essential to performing his job because of his race.

202.    When Mr. Burgess would make a mistake he would be threatened with disciplinary action, when similarly situated white employees who made similar mistakes were never approached.

203.    Mr. Burgees filed a complaint with OFCCP in 2005 that he was receiving less pay than similarly situated white employees because of his race.

204.    Management retaliated by continuing to undermine Mr. Burgess ability to do his job and then would use those facts to justify the discriminatory pay.

205.    For Mr. Burgess entire career as a Trader he was the only African-American in his Department.

206.    When Mr. Burgess submitted the resume of African-American female who as a Graduate of MIT for a position in his Department, she was not even given an interview.

207.    Mr. Burgess was forced to work in conditions that were unreasonable and untenable and in February 2006, he had no choice to resign even though he had three daughters in college.

208.    Up until his retirement Mr. Burgess received less compensation than similarly situated white employees because of his race.

209.    Mr. Burgess has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

210.    Mr. Burgess entitled to punitive damages.

211.    Mr. Burgess has opposed discrimination at CLECO; *inter aila* by filing OFCCP charges and encouraging other workers to file OFCCP charges opposing discrimination.

212.    Mr. Burgess has suffered racial discrimination; hostile work environment discrimination; and retaliation discrimination.

## FACTS SUPPORTING CLAIMS OF KELSOW WILLIAMS

213.    Mr. Williams alleges the facts above and in addition alleges:

214.    Mr. Williams is a resident of Avoyelles Parish.  He is an African-American and his date of birth is September 14, 1966.

215. During Mr. Williams's entire tenure at CLECO he has been denied promotion because of his race. And similarly situated white employees with less experience have been promoted.

216. During Mr. Williams's entire tenure he has been subjected racially hostile environment in which Senior Management either knew about and/or sometimes encouraged.

217. On October 5, 2007, Mr. Williams was at work when he noticed in the open a hangman's noose attached to an air conditioner switch next to the bathroom door.

218. When Williams raised the matter with other employees, he was told by a white employee "that this was not Jena 6, and we need to get over here and what we plotting against the white man."

219. The noose hung in place for several hours before it was removed. Mr. Williams then reported the incident to his supervisor.

220. A meeting was held with the General Manager of HR John Meloncon, Greg Willis and John Guieze. Mr. Meloncon stated to Mr. Williams at the meeting "Why does the noose offend ya'll." He then stated that there was another noose hanging in the Company, but he could not remember its exact location. Mr. Williams was so distraught he began to cry.

221. As a result of this incident Mr. Williams was not able to sleep and had to seek medical help.

222. On November 12, 2008, CLECO retaliated against Mr. William's when supervisor Terry Bonnette told Mr. Williams that he was on his "shit list". Mr. Bonnette

then told Mr. Williams, "I know about you and the company…I don't need your over here."  Mr. Williams was then sent Human Resources, who told him to report back to work.  No action was taken against the supervisor.

223.   In January 2008, the mechanics were told that a lead mechanic would be picked from their ranks. The Lead Mechanic position was a stepping stone into Management. Mr. Williams was subsequently informed that the three white Sr. Mechanics would rotate being lead mechanic. Mr. Williams was the only African-American Sr. Mechanic and he was told he would not be in the rotation.  Mr. Williams was denied promotion because of his race.

224.   He was told by his Supervisor Terry Bonnettee "the reason we did not pick you Kelsow is because of what happened." Mr. Williams knew immediately he was referring to him reporting the noose. Mr. Williams had more experience than his similarly situated white co-workers but he was overlooked for promotion because of his race.  And when he complained he was retaliated against.

225.   Mr. Williams reported the retaliatory act to Vice President Anthony Bunting.  He was later told that the company did not believe that what had happened was retaliation and of this day, Mr. Williams is still not allowed to rotate as a Lead Mechanic.

226.   Mr. Williams filed a complaint with EEOC.

227.   Senior Management has had full knowledge of racially hostile working environment at CLECO and not only knew but condoned its Managers treating Mr. Williams and African-American employees different because of their race including but

not limited to a failure to promote.  As a result of CLECO conduct Mr. Williams has suffered emotional, physical and financial harm.

228.   Mr. Williams has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights; emotional distress damages; special damages; and attorney fees and cost.

229.   Mr. Williams is entitled to punitive damages.

230.   Mr. Williams has opposed discrimination at CLECO; *inter aila* by filing EEOC charges and encouraging other workers to file EEOC charges opposing discrimination.

231.   Mr. Williams has suffered racial discrimination; hostile work environment discrimination; and retaliation discrimination.

232.   **FACTS SUPPORTING CLAIMS OF STAFFORD WILLIAMS.**

233.   Mr. Williams alleges the facts alleged above and in addition alleges:

234.   Mr. Williams is a resident of Rapides Parish.  He is an African-American. His date of birth is February 17, 1952.

235.   Mr. Williams was employed at CLECO Corporation from 1985 – 1988 first as a Utility Worker and later became a Plant Operator.  During that time he received superb performance appraisals.  Also during this time he worked in the maintenance department as a Power Plant Mechanic/ Helper where he also received outstanding recognition for his mechanical skills & abilities as a Power plant Mechanic.  He left the company on his own accord for reasons that still exist 20 years later.

236.    During 2007, here applied for employment at CLECO.  They had (5) Five positions opened for Apparatus Mechanic.  He was told that he interviewed very well and that he would be at the top of the list for one of the positions open.  He was not hired because of his race and age.  He later found out that CLECO hired 4 white males and 1 Hispanic who was a temporary employee.

237.    During the spring of 2008, CLECO ran a recruitment advertisement on a local radio (minority) station stating they were recruiting for their new power station in Lena Louisiana and they were an Equal Opportunity Employer.  He did as the radio ad stated; go take the pre-employment test at Louisiana Works.  After doing so, he was contacted for an interview for a power plant position.  The hiring supervisor, Dennis Bostick stated during his interview "we would love to have you back and I know you are certified by the N.U. S. (National Utility Systems) and I know you are a great worker".

238.    Mr. Williams told by Mr. Bostick that he "was more than qualified and he was hiring 12-15 employees and none of the candidates he had interviewed "had my power plant experience and I know you are an excellent welder."

239.    Mr. Williams was told that "Human Resources will do a background check and if comes back clean, I will be calling you to offer you your old job".

240.    Mr. Williams was not hired because of his race and age.  He was told by Mr. Bostick that "The employees that were hired are much younger and lacked the power station work experience Mr. Williams posses.

241.    Only one of the 12-15 employees hired was forty (40) years of age or older.

242.    Mr. Williams has suffered racial discrimination, and age discrimination,

## FACTS SUPPORTING THE CLAIM OF VANDA WILLIS

243.    Vanda Willis is a resident of Rapides Parish, Louisiana.  Her date of birth is March 14, 1966.

244.    She began her employment with CLECO September, 1998 and she is an African-American.

245.    Mrs. Willis is the spouse of Gregory Willis.

246.    On Thursday, On October 15, 2009, Mrs. Willis was called into Shirley Turner's office to speak with Gary Carter and Jeff Ryan.  She was told that in June 2009 she set up a deferred payment arrangement on a customer account and in August 2009 set a temporary hold code on the same account.  The customer paid and then in September a temporary hold was placed again but not removed.  This account shows Mrs. Willis as the landlord of the customer.

247.    Mrs. Willis was told that she had placed a temporary hold on the account and the customer was not disconnected, the customer now has $700 past due bill.

248.    Mrs. Willis was told that she violated the Customer Care Security Control procedures.

249.    Mrs. Willis stated that she had not violated policy because the relevant policy stated: "an employee cannot make arrangements on their account or on a relative's account.

250.    Mrs. Willis was not a relative of the customer and in fact she had filed an eviction notice against the customer to have him evicted from her resident for rent he owed her for September and October.

251.   Mrs. Willis provided CLECO with notes that showed on 3 occasions she followed up with the customer service office and to have them disconnect the customer.

252.   Mrs. Willis also provided CLECO with a copy of the eviction notice that she had filed against the customer.

253.   Mrs. Willis was given a five-day suspension without pay.  This was done because of her race.

254.   There are numerous accounts where employees have worked on their own accounts, or relatives account, not disconnected or even disconnected a customer in error, these employees received minimum or no discipline.

255.   Mrs. Willis was retaliated because of her race and because her husband Greg Willis complained against and encouraged other employees to complain against discriminatory practices at CLECO.

256.   When John Melancon, Manager of Human Resources found out that Mrs. Willis had refused to sign the disciplinary write up, he stated to the HR Representative that "you should have fired her."

257.   In 2004, Mrs. Willis Quality Assurance job was removed and she was forced to take a pay cut.  Mrs. Willis was told that management felt she had made too much money, and she would not get a merit increase for 5 years.  Mrs. Willis was told that she was at the top of her income bracket, when similarly situated white employees were getting a salary increase.   This was false motive to cover that CLECO was discriminating against her because of her race.

258.   Mrs. Willis has applied for numerous positions but she has not received an interview since 2004 because of her race.

259.   When Mrs. Willis complained to Management about the discriminatory treatment she was told that she did not have enough experience.   She was denied promotion because of her race.   Yet, in 2004 a Regulatory Analyst position was given to a white female who had only recently graduated from college.

260.   Mrs. Willis in 2005, applied for a Financial Accountant position.   She was denied promotion based on her race.   The position was given to a white female.

261.   In 2007 Mrs. Willis applied for a Tax Accountant position.   She was denied promotion based on her race.   The job was given to a white female.

262.   As a result of CLECO conduct Mrs. Willis has suffered emotional, physical and financial harm.

263.   Mrs. Willis has suffered past and future loss of wages and benefits; drastic economic damage to his pension and retirement rights.

264.   Mrs. Willis is a cancer survivor and the work environment at CLECO has caused her emotional distress damages special damages; and attorney fees and cost.

265.   Mrs. Willis is entitled to punitive damages.

266.   Mrs.   Willis   has   suffered   racial   discrimination;   and   retaliation discrimination.

## LEGAL CAUSE OF ACTION

A.     Plaintiffs,     **GREGORY WILLIS, EDDIE CULBERT, RONALD SMITH, SR., ROY HUDSON, JENNIFER HILL, ISAAC JORDAN, JOHN MURCHINSON, THOMAS JONES, JR., CALDWELL BURGESS, KELSOW WILLIAMS, JR., STAFFORD WILLIAMS** and **VANDA WILLIS** and others herein state a cause of action for different treatment in terms and conditions of employment based on race in violation of 42 U.S.C. Section 2000, and 42 U.S.C.  Section 1981.

B.     Plaintiffs, **EDDIE CULBERT, ROY HUDSON, ISAAC JORDAN, CALDWELL BURGESS,  KELSOW WILLIAMS, JR.** and others herein state a cause of action based on Hostile Work Environment based on race in violation of 42 U.S.C. Section 2000, and 42 U.S.C.  Section 1981.

C.     Plaintiffs, **GREGORY WILLIS, EDDIE CULBERT, RONALD SMITH, SR., ROY HUDSON, JENNIFER HILL, ISAAC JORDAN, JOHN MURCHINSON, THOMAS JONES JR., CALDWELL BURGESS,  KELSOW WILLIAM , STAFFORD  WILLIAMS** and **VANDA WILLIS** and others herein state a cause of action for activity based upon protected activity in violation of 42 U.S.C. Section 2000, and 42 U.S.C.  Section 1981.

D.     Plaintiffs, **EDDIE CULBERT, ROY HUDSON, ISAAC JORDAN, CALDWELL BURGESS, KELSOW WILLIAMS, JR. STAFFORD WILLIAMS** and others herein state a cause of action for Hostile Work Environment based on protected activity based on race in violation of 42 U.S.C. Section 2000, and 42 U.S.C. Section 1981.

E.      Plaintiffs, **EDDIE CULBERT, CALDWELL BURGESS, STAFFORD WILLIAMS** and others herein state a cause of action based on different treatment  based on age in violation of ADEA, 42 U.S.C. Section 2000 et seq; ADEA, 29 U.S.C.A., Section 626 (b) et seq., , 42 U.S.C.  Section 1981, and 29 U.S.C. Sections 621-634.

F.      Plaintiffs, **GREGORY WILLIS, EDDIE CULBERT, CALDWELL BURGESS** and others herein state a cause of action based for wrongful termination in violation of public policy.

G.      Plaintiffs, **JENNIFER HILL** and **VANDA WILLIS** state a cause of action for different treatment based on gender in violation of 42 U.S.C. Section 2000.

H.      **THOMAS JONES, JR.** and others herein state a cause of action based on different discriminatory pay based on race in violation of 42 U.S.C. Section 2000, and 42 U.S.C.  Section 1981.  All Plaintiffs assert any other legal cause of action under Federal and State law which the facts alleged herein and to be discovered support.

## CAUSATION

Plaintiffs plead that all of their discriminatory injures and damages were caused by the Defendant's intentional violations of various Federal and State Statutes which are pled herein above or alternatively by negligence and gross negligence of the executives, agents, and managers of the defendant corporation.

## PLAINTIFFS PLEA FOR DAMAGES AND REMEDIES

A.      Plaintiffs seek past and future lost wages and benefits;

B.      Plaintiffs see damages for emotional pain and distress and mental anguish;

C.      Plaintiffs seek damages for humiliation and suffering of

        discrimination;

D.      Plaintiffs seek damages for loss of enjoyment of life and

        inconvenience;

E.      Plaintiffs seek damages for loss of earning potential;

F.      Plaintiffs seek damages for damage to physical health and mental

        health;

G.      Plaintiffs seek damages for discriminatory compensation based upon

        race;

H.      Plaintiffs seek damages for a continuing pattern of discrimination

        that continues to this day.

I.      Plaintiffs seek punitive damages under 42 U.S.C. Section 2000 and

        42 U.S.C. Section 1981;

J.      Plaintiffs seek reasonable attorney fees and cost of suit pursuant to

        42 U.S.C. Section 2000 et seq; 42 U.S.C. Section 1988 and 29

        U.S.C. Section 621-634;

K.      Plaintiffs seek damages of injury to their reputation, character,

        economic opportunities, and defamation;

L.      Plaintiff seek injunctive relief to stop violation of law and to require

        defendants to provide a workplace free of discrimination and to

        make the Plaintiffs whole in their jobs and opportunities for training.

WHEREFORE, Plaintiffs **GREGORY WILLIS, EDDIE CULBERT, RONALD SMITH, SR., ROY HUDSON, JENNIFER HILL, ISAAC JORDAN, JOHN MURCHINSON, THOMAS JONES, JR., CALDWELL BURGESS, JR., KELSOW WILLIAMS, JR., STAFFORD WILLIAMS** and **VANDA WILLIS** pray that CLECO CORPORATION be duly served and made to answer; that after due proceedings are had, that they be found liable to each Plaintiff in the amount established by trial, but in a sum of not less than $35,000,000.00 (Thirty- Five Million Dollars), plus interest thereon as allowed by law, and post judgment interest, attorney's fees to be established at trial, cost of court, and all general and equitable  relief to which they may be entitled.

**PLAINTIFF DEMAND TRIAL BY JURY**

Dated this the _____day of _____2009

Respectfully submitted,


_____
LARRY ENGLISH
*ENGLISH & ASSOCIATES, LLC*
*Louisiana Bar Roll #:  22772*
415 Texas Street, Suite 320
Shreveport, Louisiana  71101
Telephone:  (318) 222-1900
Facsimile:   (318) 226-1660


_____
BRIDGETTE BROWN
ATTORNEY AT LAW
*Louisiana Bar Roll#:  18815*
P.O. Box 1790
Alexandria, Louisiana 71309-1790
Telephone  (318) 443- 9000
Facsimile   (318) 443-1444


**Please Serve:**

**Hold Service**