U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 12 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

---

GREGORY WILLIS

CIVIL ACTION NO. 09-2103

versus

JUDGE TOM STAGG

CLECO CORPORATION

---

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Gregory Willis ("Willis"). See Record Document 137. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Willis, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964; Section 1981 of the United States Code; the Louisiana Employment Discrimination

---

[1] Much of the background is adopted from the court's previous summary judgment ruling. See Record Document 105.

Law; and the Louisiana Commission on Human Rights. See Record Document 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the plaintiffs' remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Willis, the court dismissed several of his discrimination and retaliation claims. See Record Document 105. The court now addresses Willis's two remaining claims of retaliation and his hostile work environment claim.

Willis began working with Cleco in December of 2000 as a Human Resources Representative for its customer service offices, and he was promoted to Senior Human Resources Representative in August of 2003. As a Senior Human Resources Representative, Willis's responsibilities included "employee relations, staffing, recruiting, assisting in writing job descriptions, participating in job fairs, participating in employee orientations, investigating incidents of claimed misconduct among Cleco employees, and providing advice to Cleco employees related to human resource and career matters." Record Document 137, Ex. B at 1. From 2005 until his termination in 2009, Ed Taylor ("Taylor"), the Manager of Human Resources, was Willis's supervisor. See id., Exs. A at 26, 28, 35, and 39 and B at 1.

2

In March of 2007, Willis reported to Jeff Hall ("Hall"), the Chief Diversity Officer, and George Bausewine ("Bausewine"), the Senior Vice President of Corporate Services, that he overheard a conversation between Robbyn Cooper ("Cooper"), a Communications Representative, and John Melancon ("Melancon"), the General Manager of Human Resources and Safety, in which Cooper made racially-offensive comments. See id., Ex. A at 39, 66, and 68. Willis was not a party to the conversation, but overheard it from outside Cooper's office. Willis claims that, as a result of reporting this conversation, persons at Cleco retaliated against him by: 1) issuing him a written disciplinary warning for sending an email to Cleco employees revealing the health information of a fellow employee's ill son, and 2) placing him on a work improvement plan. Cleco maintains that Willis's claims are without merit.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v.

---

[2] The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).   "Rule 56[(a)]

mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.

2004).   If the movant demonstrates the absence of a genuine dispute of material

fact, "the nonmovant must go beyond the pleadings and designate specific facts

showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v.

Lee, 379 F.3d 131, 141 (5th Cir. 2004).   Where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant, then summary judgment should be granted.   See Boudreaux v. Swift

Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).   The Fifth Circuit has cautioned

that "conclusory allegations, speculation, and unsubstantiated assertions are

inadequate to satisfy" the nonmovant's burden in a motion for summary judgment.

Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Retaliation Claims.**

Willis alleges retaliation by Cleco in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; Section 1981 of the United States

4

Code, 42 U.S.C. § 1981[3]; the Louisiana Employment Discrimination Law, La. R.S.

23:301, et seq.; and the Louisiana Commission on Human Rights, La. R.S.

51:2256.[4]   For cases of discrimination and retaliation based on circumstantial

evidence, the court applies the McDonnell Douglas burden-shifting analysis.[5]   See

Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824

(1973)).

> To survive summary judgment under McDonnell Douglas, the
> plaintiff must first present evidence of a prima facie case of
> [retaliation]. If the plaintiff presents a prima facie case, [retaliation] is
> presumed, and the burden shifts to the employer to articulate a
> legitimate, [nonretaliatory] reason for the underlying employment
> action.  If the employer is able to state a legitimate rationale for its
> employment action, the inference of [retaliation] disappears and the

---

[3]Claims of employment discrimination brought pursuant to 42 U.S.C. § 1981 are analyzed under the same standards as Title VII claims.  See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007).

[4]Cleco argues that Willis's retaliation claims are not actionable under Louisiana Revised Statute 51:2256 and that he is precluded from bringing his claims under Title VII for failure to timely exhaust his administrative remedies. Since Willis does not contest this in his opposition, the court will only address his claims under Section 1981.

[5] "An employee can prove discrimination [or retaliation] through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).  Willis does not allege that he possesses direct evidence in support of his retaliation claims and argues his claims under the McDonnell Douglas evidentiary framework.

5

plaintiff must present evidence that the employer's proffered reason was mere pretext for [retaliation].[6]

Davis, 383 F.3d at 317 (citations omitted).

### 1.    Disciplinary Warning Claim.

On March 15, 2007, Willis emailed twenty-four Cleco employees disclosing that the son of another employee, James Eli ("Eli"), was in the emergency room because he had overdosed on thirty-one pills earlier that morning, and Willis asked the recipients of the email to pray for Eli's family.  See Record Document 137, Ex. A at 164-65 and Attachment D-15.  Declarations of Chief Diversity Officer Hall and Taylor, the Manager of Human Resources, state that Eli reported to them that he had not requested Willis to send such an email and that Willis's action caused him and his wife considerable pain and distress.  See id., Exs. B at 1-2 and E at 1. In contrast, Willis claims that he had Eli's permission to send the email.

On April 16, 2007, Taylor issued Willis a written disciplinary warning for sending the email.  The warning informed Willis that while he believed he had permission to contact other employees regarding Eli's son, he did not have permission to write a very detailed email containing personal medical information

---

[6] "[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

using Cleco's email system. See id., Ex. A at D-15. The warning further informed

Willis of the following:

> Your action demonstrated a lack of good judgment and harmed a
> fellow employee who was already under stress. This event
> demonstrates a lack of respect for the parties involved, a violation of
> the Cleco Guiding Principles, and undermines the high level of trust
> that one in your position must maintain.

Id. The warning further advised Willis to use better judgment in confidential

matters and that the warning would be maintained in a disciplinary file. See id.

Willis claims this warning was issued in retaliation for reporting the conversation

between Cooper and Melancon.

To establish a prima facie case of retaliation, a plaintiff must demonstrate

that:

> (1) he participated in an activity protected by Title VII; (2) his
> employer took an adverse employment action against him; and (3) a
> causal connection exists between the protected activity and the
> adverse employment action.

McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). "The causal

connection need not rise to the level of 'but for' causation at the prima facie stage."

Russell v. Univ. of Tex. of the Permian Basin, 234 F. App'x 195, 205 (5th Cir.

2007) (citing Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002)).

Cleco assumes that Willis can establish a prima facie case for his

disciplinary warning claim. The parties do not dispute that Willis participated in a

protected activity by reporting the alleged comments made by Cleco employees, nor do they dispute that the disciplinary warning was an adverse employment action. Cleco also does not contest that Willis can establish a causal connection between his protected activity and the disciplinary warning and only argues that Willis cannot present sufficient evidence to show its legitimate reasons were pretextual.

As mentioned, once the plaintiff has established a prima facie case of discrimination or retaliation, the burden shifts to the employer to state a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy, 492 F.3d at 557. Cleco claims that Taylor issued the warning because Willis used poor judgment by revealing personal information of one of his co-workers which caused that co-worker emotional harm. This reason is clearly indicated by the warning letter. Cleco has met its burden of production. Now the burden shifts to Willis to demonstrate that Cleco's legitimate reason is actually a pretext for retaliation.

"To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." Id. "A plaintiff may establish pretext 'by showing that a [retaliatory] motive more likely motivated'" his

employer's decision by such evidence as disparate treatment, or that the employer's explanation is unworthy of credence. <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 220 (5th Cir. 2001) (quoting <u>Defenbaugh-Williams v. Wal-Mart Stores, Inc.</u>, 156 F.3d 581, 589 (5th Cir. 1998)).   When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions. <u>See LeMaire v. La. Dept. Of Transp. & Dev.</u>, 480 F.3d 383, 391 (5th Cir. 2007).   Anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones. <u>See id.</u> (citing <u>Little v. Republic Ref. Co.</u>, 924 F.2d 93, 97 (5th Cir. 1991)).   Willis must do more than argue that Cleco made an incorrect decision.

Willis attempts to rebut Cleco's legitimate, nonretaliatory reason by arguing that Cleco has not produced any evidence from Eli and that, in truth, Eli never complained about the email.   This argument is flawed in that it misunderstands the parties' burdens at summary judgment.   Cleco need only produce a legitimate, nonretaliatory reason for its decision.   The burden is upon Willis to present evidence which calls that reason into question.   Ironically, Willis is the one who presents no evidence from Eli.   He makes the claim that Eli never complained about the email yet cites to no evidence in the record to substantiate that claim.   He instead mentions that he and Eli were close friends and that Eli was a pall bearer at

his mother's funeral.  These arguments do nothing to rebut Cleco's legitimate, nonretaliary reason for issuing the discipline warning.[7]

Next, Willis mentions that it was common practice for Cleco employees to send emails requesting prayers for fellow employees and family members.  He claims that Shannon Harvey ("Harvey"), a white Cleco employee, sent a similar email and was never disciplined.  According to Willis, Harvey sent out an email asking others to pray for a coworker who had diabetes.  Willis does not indicate, however, to whom the email was sent, whether Harvey had permission to send the email, whether the employee who was the subject of the email complained about it, or if anyone in Cleco management was made aware of the email.

As previously mentioned, Willis may establish pretext by showing disparate treatment; however, "the conduct that drew the adverse employment action must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had

---

[7] Willis also argues that Cleco is unable to produce a specific company policy that he violated.  This court does not find it necessary for Cleco to have a specific written policy that covers this disciplinary action for it to be legitimate. This argument carries no weight.

10

their employment status determined by the same person, and have essentially comparable violation histories." Id. "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." Id. (quoting Wallace, 271 F.3d at 221).

The circumstances surrounding Willis's conduct are far from being nearly identical to that of Harvey. They differ in these respects: they had different positions with different responsibilities; there is evidence that Eli complained of Willis's email while there is no evidence of a complaint regarding Harvey's email; they had different supervisors; and there is no evidence that any supervisor was even aware of Harvey's email. The specific contents of the emails differ greatly as well. Harvey's email made reference to a coworker's difficulty with diabetes; Willis's email disclosed information regarding a coworker's son who was in the emergency room for overdosing on pills. While both concern medical information, Harvey's email was of a general nature while Willis's email was specific, detailed, and touched upon a very sensitive and private matter. The court hardly considers the two to be comparable. Willis has failed to show that the circumstances surrounding his email and Harvey's email were nearly identical.

Willis presents several other arguments, which are more akin to a barrage of allegations, to support his case. The first one he makes is that Melancon and Taylor were known to harbor racist attitudes toward African-American employees. For example, Patrick Lacour, a white male who worked as a Senior Internal Auditor for Cleco, stated in his declaration that Melancon told him in an exit interview that he would not allow himself or his family to live in Alexandria, Louisiana, because there were too many black people who lived there. See Record Document 149, Ex. A at 66. Jerome Ardion ("Ardion"), a white male who was Manager of Distribution Operations, stated in his declaration that Taylor would tell him to hire a Caucasian to fill an employment vacancy created by the departure of a Caucasian employee. See id., Ex. A at 3. Ardion also stated that during a conversation with Melancon in the spring of 2007, Melancon was "VERY PISSED" with Willis and stated that "[i]f we have to create a reason, Ed and I have decided; we are going to terminate that Nigger, Greg Willis for reporting me to George and trying to burn my ass[.]"[8] Id., Ex. A at 4. Willis stated in his own declaration that, after reporting Melancon, he complained to Taylor of Melancon's

---

[8] Cleco argues that this statement is inadmissible hearsay. While the statement meets the definition of hearsay, the court finds that it fits under the exclusion in Federal Rule of Evidence 801(d)(2)(D) as a statement by an agent or servant of the defendant concerning a matter made within the scope of employment.

actions toward him to which Taylor replied that Willis should not have reported Melancon to George Bausewine. While this evidence alone does not satisfy Willis's burden at summary judgment, it is circumstantial evidence which will be considered by the court in arriving at its final decision.[9]

What the court finds most significant in making its determination on the issue of pretext is the connection, or lack thereof, between the person with the retaliatory motive, Melancon, and the person who decided to issue the warning, Taylor. While Willis has produced evidence of a retaliatory animus with respect to Melancon, he has not produced evidence of a retaliatory animus on the part of

---

[9] Some of Willis's allegations and arguments on the subject, however, are either inadmissible as evidence, conclusory, or irrelevant. For instance, statements by some Cleco employees that Melancon used "unwelcome" comments toward Willis without specific examples are conclusory statements and do not create a genuine dispute of fact. The declarations of other employees who allege that Hall stated in the past that Taylor and Melancon are racists are inadmissible hearsay and are otherwise merely echoes of another individual's opinion. An allegation that another co-worker is racist, without more, is merely an opinion and is not an assertion of fact. Other employees have declared that Felice Burton, an employment coordinator, stated privately that she had been discriminated against by Taylor and there existed a pervasive air of discrimination in Cleco's Human Resources department. Not only are these statements examples of inadmissible hearsay, but they are also not statements of fact. They are conclusions of law which are to be based upon fact. These statements are worthless to Willis's case. Willis himself testified that after engaging in his protected activity, Melancon began retaliating against him by isolating him; however, Willis presents no concrete evidence or specific instances of isolation to substantiate this. This is yet another conclusory claim by Willis that will not be considered by the court in arriving at its decision.

Taylor, the decision-maker.[10]  Evidence of Melancon's involvement in the decision
to issue the disciplinary warning is central to the issue of pretext since Melancon
was the one with a motive to retaliate against Willis.  The only admissible evidence
that Willis shows to establish this connection is Ardion's declaration of
Melancon's alleged, unilateral statement that if he and Taylor had to create a
reason, they would terminate Willis for reporting Melancon.

The court finds that Melancon's alleged statement, without more, is
insufficient to connect Melancon's displeasure with Willis's protected activity and
the adverse employment decision made by Taylor.[11]  The evidence presented to this
court indicates that Taylor was the one who learned of the email, received a
complaint, and decided to act by issuing the disciplinary warning.  There is no
evidence that Melancon was initially involved in the decision to issue the warning,
that he procured Taylor to issue the warning, or that Taylor and Melancon entered
into a conspiracy to retaliate against Willis, despite Willis's conclusory allegations

---

[10]Willis has presented evidence of a discriminatory animus for Taylor;
however, the court does not find this evidence relevant to whether Taylor issued
the disciplinary warning in retaliation for Melancon.  Willis's burden is to show a
retaliatory animus, not just one of discrimination.

[11]Although the disciplinary letter was written, signed, and sent by Taylor,
Melancon's signature was also on the letter.  Willis, however, did not bring this to
the court's attention.  However, there is no evidence concerning the degree of
Melancon's involvement in the decision, if he were so involved.  The court has
considered this in arriving at its decision.

14

to the contrary. As this court has mentioned, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" Willis's burden at summary judgment. Ramsey, 286 F.3d at 269. For these reasons, Willis has failed to satisfy his burden of showing that Cleco's reason for issuing the disciplinary warning was pretextual.

### 2.    Work Improvement Plan.

On August 15, 2007, nearly five months after his protected activity, Willis was placed on a work improvement plan by Taylor. See Record Document 137, Ex. B at 2. According to Cleco, Taylor placed Willis on the plan because he received negative feedback on Willis's performance during the first six months of 2007. Willis was working on the Rodemacher Power Station hiring initiative during that time. The new plant was a billion dollar project in which Cleco needed to hire seventy to eighty employees. See id. Taylor claims that the situation at the Rodemacher Power Station was "chaotic", that Willis was not performing his job as directed, and that he had to "step in and take over the process" from Willis. Id.

Taylor also received several complaints from some of Willis's internal clients. For example, Cleco's Chief Diversity Officer Hall reported to Taylor that Willis frequently missed diversity meetings. See id., Exs. B at 2-3 and E. Director of Employee Relations, Rebekah Spring, complained to Taylor that Willis was

15

constantly asking her questions that he should have known the answer to and that "he did not seem to learn from one event to the next." Id., Exs. B at 2-3 and F.

As part of Willis's work improvement plan, Taylor instructed him to work closely with Rebekah Spring "in the hopes that her strengths in organization, attention to details, adherence to procedures, systematic thinking, and proactivity would help [Willis] improve in these areas." Id., Exs. D-7 and B at 3. Taylor claims that this decision was entirely unrelated to Willis's decision to report the conversation between Melancon and Cooper. He further states that work improvement plans are designed to assist employees in reaching levels of expected performance and are not disciplinary actions. See id.

Cleco argues that Willis cannot state a prima facie case because he cannot establish a causal link between his complaint and his placement on the work improvement plan. Cleco goes on to state that because the two events are more than five months apart, and Willis has provided nothing beyond speculation, he has failed to establish the causation prong of his prima facie case.

In response, Willis only argues that there was a continuing pattern of retaliation between March and August of 2007 which included being isolated by Melancon and, therefore, a causal link exists between his protected activity and the work improvement plan. But as the court has already addressed, Willis's

16

allegations of isolation are conclusory and unsubstantiated.  His allegation of being subjected to a continuing pattern of retaliation is no different.  This argument adds nothing to the issue.

As Cleco mentioned in its brief, although temporal proximity may, in some cases, establish the causal connection for a prima facie case of retaliation, the timing must be very close.  See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007).  "The mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case."  Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002) (holding that a five month time period between the protected activity and the adverse employment action was insufficient to establish a causal connection).

The only evidence of causation that the court can glean from the record is that the work improvement plan occurred five months after his protected activity.  Other evidentiary attempts are either conclusory, unsubstantiated, or are not found in or cited to in the record.  Accordingly, Willis has failed to establish the causal link of his prima facie case.[12]

---

[12]Although Cleco did not directly address this point, the court can hardly see, within this context, how the work improvement plan is an adverse employment action.  Under a retaliation claim, the second prong of the prima facie case is met if a reasonable employee would have found the employer's action to be materially adverse, which means it could have dissuaded a reasonable worker from engaging in the protected activity.  See Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473,

Assuming, <u>arguendo</u>, that Willis could establish a prima facie case, his claim fails on the issue of pretext. Willis alleges that he objected to being on the work improvement plan, to which Taylor responded that Willis should not have reported Melancon; however, his brief gives no citation to the record to substantiate this allegation. Additionally, he alleges that Melancon shunned Willis which is also not supported and is otherwise conclusory. "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." <u>Malacara v. Garber</u>, 353 F.3d 393, 405 (5th Cir. 2003) (citing <u>Ragas v. Tenn. Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998)).

Willis also alleges that he has never been placed on a work improvement plan before the protected activity. This allegation may have given some weight to his claim on the causation and pretext issues, if the court could find it within his numerous exhibits.[13]

---

484 (5th Cir. 2008). As mentioned previously, Cleco asserts that the work improvement plan was not a disciplinary action but one to assist an employee in meeting expectations. To the extent this assertion put Willis on notice that there was no adverse employment action, the court does not find the work improvement plan to be materially adverse to sustain Willis's prima facie case.

[13] Willis does cite to Taylor's deposition in support at Record Document 149, Exhibit A at 70, lines 20-25, but he runs into a few problems in the process. First, Taylor's deposition is not located in Exhibit A but is located in Exhibit D. Second, once the court located Taylor's deposition, this is what was provided on lines

Willis does present actual evidence, however, through his own testimony that he missed diversity meetings because he was working at the Dolet Hills power plant, which was one hundred miles away from the meetings. He also points to the fact that Melancon testified in his deposition that Willis received good performance evaluations before March of 2007. This, he argues, is not asserted to prove that Taylor and Melancon used poor judgment or were mistaken in putting him on the work improvement plan, but that Melancon and Taylor were "out to get him for reporting Melancon." Record Document 149, Memorandum in Opposition at 16.

The main flaw with Willis's argument is the same as with his argument regarding his disciplinary warning claim. Again, it was Taylor who decided to put Willis on the work improvement plan, not Melancon. In fact, the connection

---

twenty to twenty-five of page seventy:

> SUSAN:    - - and talk with the supervisor, see if she can make
>           some arrangements with you.
>
> JOHNNY:   Okay.  Would it be best if I brought them the
>           receipt that I - - showed I paid?[sic]

This portion of Taylor's deposition has absolutely no relation to the fact asserted by Willis. "[Rule 56] does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994)).

19

between Melancon's alleged retaliatory animus and Taylor's decision to put Willis on the work improvement plan is even more attenuated than in his disciplinary warning claim, therefore, a fortiori, Willis has failed to meet his burden in showing that Cleco's reasons for the work improvement plan were pretextual.  There is no evidence that remotely indicates that Melancon was involved in Taylor's decision. All Willis has shown to support his case is Melancon's alleged statement to Ardion and his speculation that Melancon conspired with Taylor.  Willis has failed to create a genuine dispute of fact regarding whether Taylor's decision to put him on the work improvement plan was a pretext for retaliation.

## C.   Hostile Work Environment And Wrongful Termination Claims.

In order to establish a hostile working environment claim, Willis must prove that:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is

20

> physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey, 286 F.3d at 268 (quotations and citations omitted).  The following paragraph constitutes the entirety of Willis's argument in regard to his hostile work environment claim:

> Mr. Willis is African-American.  He and other employees worked in a pervasive environment at Cleco.  Mr. Willis worked directly under Melancon and Taylor.  They subjected Mr. Willis to a continuing pattern of hostile work environment.

Record Document 149, Memorandum in Opposition at 17.

Willis cannot support his claim by merely stating in a conclusory fashion that he was subjected to a hostile work environment or that harassment was pervasive.  Other employees' declarations which state the same fare no better.  They, like much of Willis's evidence, are conclusions of law, not assertions of fact. As for the admissible evidence he has presented, while offensive, it does not rise to a level of being severe or pervasive.  Considering the arguments and evidence before it, the court finds that Willis has failed to satisfy the fourth element of his hostile work environment claim.  Therefore, summary judgment is appropriate in regard to Willis's claim.

### III. CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 137) is **GRANTED**.  The court finds there is no genuine dispute as to any material fact with regard to Willis's retaliation claims or his hostile work environment claim.[14]

A judgment order consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ⎯12th⎯ day of February, 2013.



JUDGE TOM STAGG

---

[14] Willis also urges this court to reconsider its ruling dismissing his claim for wrongful termination.  He claims that, due to the court's granting the parties additional time for discovery, he now has evidence that Cleco acted in bad faith when it terminated him.  The court, having considered the evidence and its original ruling, finds no reason to reconsider Willis's wrongful termination claim.